Bernard JERRY, Petitioner

v.

**DEPARTMENT OF CORRECTIONS,**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 11, 2009.

Decided Feb. 17, 2010.

Bernard Jerry, petitioner, pro se.

Timothy I. Mark, Deputy Chief Counsel and Suzanne N. Hueston, Chief Counsel, Camp Hill, for respondent.

BEFORE: McGINLEY, Judge, SIMPSON, Judge, McCLOSKEY, Senior Judge.[1]

OPINION BY Judge SIMPSON.

In this *Holloway*[2] assessment appeal, Bernard Jerry, a state prison inmate, petitions for review of an order of the Secretary of the Department of Corrections (DOC) denying Jerry's appeal of an assessment of $91.00 against his prison account for the medical treatment of a DOC employee he assaulted. Jerry, representing himself, essentially contends DOC improperly assessed his prison account because workers' compensation covered the cost of the employee's medical treatment, because DOC failed to present competent evidence to sustain the assessment, because the assessment hearing violated his due process rights, including his right to a pre-assessment hearing, and because the assessment hearing examiner was biased. We affirm.

1. The decision in this case was decided before Senior Judge McCloskey retired on December 31, 2009.

2. *See Holloway v. Lehman*, 671 A.2d 1179 (Pa.Cmwlth.1996) (before an assessment of damages against an inmate's prison account can occur, the inmate must be provided with a hearing and adjudication that comports with Sections 504–07 of the Administrative Agency Law, 2 Pa.C.S. §§ 504–07).

Jerry is an inmate at SCI–Cresson. In April, 2008, Jerry assaulted Teresa Rainelli, a DOC phlebotomist (Phlebotomist). More specifically, as Phlebotomist began to draw blood from Jerry's left hand, Jerry removed the needle and stabbed Phlebotomist's right palm with it.

After a hearing on April 17, 2008, at which the Phlebotomist testified by speaker phone, Jerry was found guilty of a Class I misconduct, which includes assault and aggravated assault. DOC placed Jerry in the Restricted Housing Unit (RHU). Assessment of costs for Phlebotomist's treatment was also ordered.

■ Thereafter, DOC issued Jerry a notice of assessment hearing to determine the amount of an assessment, if any, against his prison account for costs stemming from the misconduct. In July, 2008, a DOC hearing examiner held a *Holloway* hearing to determine the amount of the assessment. Jean Sliko, DOC's business manager at SCI–Cresson (Manager), identified an invoice she received from the Altoona Regional Health System (Provider) for Phlebotomist's medical care on the date of the assault. Provider's bill reflected a $91.00 charge for a clinic visit and named Phlebotomist as the patient. Jerry objected on the ground Manager's testimony constituted hearsay because she did not know for a fact that Phlebotomist went to Provider and received the treatment at issue. Jerry also asserted workers' compensation covered Phlebotomist's injury and therefore he cannot be assessed any costs for it. The hearing examiner upheld the assessment. Jerry filed exceptions to the hearing examiner's report, which the Secretary denied. Jerry petitions for review.[3]

3. Our review of administrative agency decision is limited to determining whether the agency's necessary findings were supported by substantial evidence or whether the agency

### Issues

Jerry presents three chief issues. First, Jerry asserts the workers' compensation system precludes DOC's assessment against his prison account for Phlebotomist's medical expenses stemming from the incident. Second, Jerry asserts the assessment hearing violated his due process rights, including the right to a pre-assessment hearing. Third, Jerry alleges bias on the part of the hearing examiner because the misconduct and assessment hearing officers, as well as Phlebotomist, are DOC employees who share DOC's interests.

### A. Workers' Compensation

■ Jerry first contends DOC cannot recover the costs of Phlebotomist's medical treatment related to the assault because workers' compensation covers these costs. He maintains DOC has no authority to act as a collection agency for a workers' compensation insurer.

We disagree. DOC is entitled to assess inmates found guilty of either a Class I or Class II misconduct for reimbursement of expenses incurred as a result of the inmate's misconduct. 37 Pa.Code § 93.10(a) (inmate discipline); *Brome v. Dep't of Corrs.*, 756 A.2d 87 (Pa.Cmwlth.2000). In *Brome*, we recognized DOC is a self-insured agency that is not precluded from seeking reimbursement from an inmate for medical expenses for a DOC employee injured in an inmate assault. Therefore, we reject Jerry's contention that DOC cannot assess his prison account for Phlebotomist's medical expenses related to the assault.

erred as a matter of law or violated any constitutional rights. *Moss v. Dep't of Corrs.*, 838 A.2d 32 (Pa.Cmwlth.2003).

## B. Assessment Hearing

■ Jerry also contends that DOC's assessment is not supported by substantial evidence and that the assessment hearing violated his due process rights. Jerry further asserts Provider's invoice, which DOC submitted into evidence in support of its assessment, was inadmissible hearsay. Jerry points out the invoice was neither signed nor notarized as authentic.

Also, Jerry cites *Burns v. Pennsylvania Department of Correction*, 544 F.3d 279 (3d Cir.2008), where the United States Third Circuit Court of Appeals reasoned that the notice of assessment of funds in an inmate's institutional account, even if not collected, impairs a cognizable property interest in the nature of a "right to security" in his prison account, and therefore DOC's failure to afford the inmate a pre-assessment hearing violated his procedural due process rights even if no money was taken. Jerry further contends the disciplinary process violated other due process rights under the United States and Pennsylvania Constitutions, including the right to confront and cross-examine his accusers.

■ DOC counters the assessment proceeding did not violate Jerry's due process rights. DOC also contends that *Burns* is a non-binding federal circuit decision and that no pre-assessment hearing is required. Further, DOC stresses that the only issue at a *Holloway* hearing, is the amount of the assessment. *Moss v. Dep't of Corrs.*, 838 A.2d 32 (Pa.Cmwlth.2003); *Brome*. Consequently, DOC's determination that Jerry committed the underlying misconduct is not subject to our review.[4] *Id.*

DOC's decision to charge an inmate's prison account is an agency "adjudication" as defined in 2 Pa.C.S. § 101. *Holloway v. Lehman*, 671 A.2d 1179 (Pa.Cmwlth.1996). As such, the inmate is entitled, after reasonable notice, to a hearing. 2 Pa.C.S. § 504; *Holloway*. The inmate must be afforded an opportunity to be heard, all testimony must be recorded, and a full and complete record of the proceedings kept. *Id.* Reasonable examination and cross-examination must be permitted. 2 Pa.C.S. § 505; *Holloway*. The adjudication must be reduced to written decision that includes findings of fact and reasons for the decision. 2 Pa.C.S. § 507; *Holloway*.

Here, Jerry contends Provider's invoice and Manager's testimony that she received the invoice, constituted hearsay. Jerry asserts Manager did not know for a fact whether Provider treated Phlebotomist on the date in question or who performed the medical services. Jerry was not provided an opportunity to cross-examine Phlebotomist. Jerry further asserts Provider's invoice was unsigned, was not notarized as authentic and that he could not cross-examine a piece of paper.

However, Jerry did not challenge the amount of the assessment, which is the only issue in a *Holloway* hearing. At that

---

4. In any event, DOC notes that due process in prison disciplinary proceedings requires advance written notice of the alleged violations; a written statement from the fact finders as to the evidence relied on and the reasons for the disciplinary action; and an opportunity to call witnesses and present documentary evidence if not unduly hazardous to institutional safety. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). However, due process in internal prison disciplinary proceedings does not extend to confrontation and cross-examination of adverse witnesses. *Id.* "Confrontation and cross-examination present greater hazards to institutional interests." *Id.* at 567, 94 S.Ct. 2963. "If confrontation and cross-examination of those furnishing evidence against the inmate were to be allowed as a matter of course, as in criminal trials, there would be considerable potential for havoc inside the prison walls." *Id.*

hearing, Manager testified she received Provider's invoice for Phlebotomist's outpatient treatment on April 14, 2008, the day of the assault. Notes of Testimony (N.T.), 07/16/ 08, at 7. The hearing examiner admitted the invoice into the record. *See* Commonwealth's Ex. 1. Regarding Jerry's hearsay challenge, the hearing examiner noted Provider's invoice has sufficient indicia of reliability; it identifies Phlebotomist as the patient treated, her sex, her address, and April 14, 2008 as the date of her treatment (a clinic visit). N.T. at 12–13.

The assessment hearing record also included DOC's initial misconduct report and the misconduct hearing examiner's decision and sanction. *See* Hr'g Examiner's Exs. 2 and 3. Phlebotomist testified at the misconduct hearing that on April 14, 2008, Jerry pulled the needle out of his hand and stabbed her with it. *Id.* These reports corroborate that Jerry injured Phlebotomist on the date of her treatment at Provider.

■ Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Pa. R.E. 801(c). A statement may be hearsay only if it is offered to prove the truth of the matter asserted. *Id.*, Comment. But, an out-of-court statement offered to explain a course of conduct is not hearsay. *See e.g., Commonwealth v. Chmiel,* 585 Pa. 547, 889 A.2d 501 (2005) (conduct of police); *Commonwealth v. Hardy,* 918 A.2d 766 (Pa.Super.2007), *appeal denied,* 596 Pa. 703, 940 A.2d 362 (2008) (course of conduct undertaken by investigating police officer); *Commonwealth v. Dargan,* 897 A.2d 496 (Pa.Super.2006), *appeal denied,* 591 Pa. 671, 916 A.2d 1101 (2007) (same); *Commonwealth v. Dent,* 837 A.2d 571 (Pa.Super.2003) (conduct of police).

Here, Commonwealth's Exhibit 1, Provider's bill, was not offered to prove the truth of outpatient services rendered to Phlebotomist on the day of the assault. Instead, the bill was offered to explain DOC's subsequent conduct in assessing Jerry's prison account $91.00. The person knowledgeable about the assessment testified, and she was subject to Jerry's vigorous cross-examination. Under these circumstances, the exhibit is non-hearsay, and it can support the assessment.

■ Moreover, Jerry received all process due in a *Holloway* hearing, which, as noted, is limited to a determination of the amount of the assessment. *Moss; Brome.* In this regard, it is useful to recall that the assessment hearing was the second hearing for Jerry. The first hearing was the misconduct hearing, at which Phlebotomist testified by speaker phone.

■ Regarding the *Holloway* hearing itself, Jerry received reasonable notice. The hearing examiner provided Jerry an opportunity to be heard and to ask questions regarding the amount of the assessment. The hearing testimony was transcribed, and Jerry received a written adjudication that included the hearing examiner's findings and reasoning. This satisfies due process requirements. *Moss.* As we noted in *Brome,* DOC is an administrative agency and a *Holloway* hearing is an administrative hearing, not a criminal trial. Therefore, an inmate challenging a DOC assessment against his prison account is not entitled to the same due process protections as a defendant in a criminal trial. *Brome.*

Jerry also cites *Burns,* where the Third Circuit held a DOC inmate had a due process right to a "pre-assessment hearing" on the basis that DOC's decision in the misconduct proceeding to assess an inmate's prison account constituted a de-

privation of a protected property interest. 544 F.3d at 290–91. The *Burns* majority, deciding an issue of first impression, determined that in addition to the recognized property interest in the funds in an inmate's prison account, there is also a property interest in having the prison account unencumbered by a DOC assessment. In short, the *Burns* majority held that DOC's assessment reduced the economic value of the inmate's prison account and that such a deprivation triggers the Fourteenth Amendment's Due Process Clause.[5]

We need not confront the *Burns* decision now because it has no relevance to the current controversy. *Burns* involved the process provided to an inmate at the point of liability determination, which, as here, occurred at the misconduct hearing. At Burns' misconduct hearing, however, information was received *in camera* from confidential informants who were not subject to cross-examination. No *Holloway* hearing was involved. These procedures are unlike those in the present case, and for this reason we distinguish *Burns*.

Here, Jerry had two hearings, each held after notice. At the first hearing, which determined liability, his victim testified, and he asked questions. At the second hearing, which determined damages, the person responsible for the assessment testified, and Jerry asked questions. Written findings were made after each hearing, and they were provided to Jerry. In view of the process actually afforded Jerry, we conclude that there was no significant risk that he was erroneously deprived of any property right. *See Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (among factors to be reviewed in procedural due process evaluation is the risk of erroneous deprivation of private interest through the procedures used).

### C. Conflict of Interest

■ Jerry further contends the assessment hearing examiner was biased because he, the misconduct hearing examiner and Phlebotomist, are all DOC employees. Jerry asserts they share DOC interest in the proceeding and were thus biased against him. *See United States v. Abel*, 469 U.S. 45, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984) (membership in a prison gang can support an inference that the witness would adhere to tenets of that gang, which include lying under oath on behalf of another gang member).

■ DOC counters that in order to demonstrate bias, the adjudicator's interest in the outcome of the matter must be direct and substantial. *Subaru of Am., Inc. v. State Bd. of Vehicle Mfrs., Dealers & Salespersons*, 842 A.2d 1003 (Pa.Cmwlth. 2004). "Impermissible bias requires evidence particular to the adjudicator and particular to the controversy; disqualifying bias cannot simply be inferred from the status of the adjudicator...." *Id.* at 1010. Also, "preconceived views about law or policy are not a basis for disqualification." *Id.* "A tribunal, to be fair, is not required to be staffed by indifferent citizens with at most a tepid enthusiasm for the agency's statutory mission." *Id.*

In this case, Jerry simply alleges bias on the basis that Phlebotomist and the hearing examiners are all DOC employees and thus biased in favor of DOC. As discussed, disqualifying bias cannot be inferred simply because the adjudicator is affiliated or connected with the agency. *Subaru.* Members of an agency tribunal are assumed to be individuals of conscience and

---

5. The *Burns* dissent disagreed, noting that "DOC's mere 'assessment'—which has neither been reduced to a liquidated sum nor finally adjudicated-does not implicate a property right recognized under Pennsylvania law." 544 F.3d at 292.

intellectual discipline who are capable of adjudicating a particular controversy fairly on the basis of its own facts and circumstances. *Id.* Absent any evidence or assertion of direct and substantial bias on the hearing examiner's behalf, Jerry's argument fails. *Id.*

For all the reasons discussed, we affirm.

### ORDER

**AND NOW,** this 17th day of February, 2010, the order of the Secretary of the Department of Corrections is **AFFIRMED.**